1  MATTHEW B. MOCK (SBN 316380)
   **SCHIFF HARDIN LLP**
2  5000 Birch St. West Twr. 3000
3  Newport Beach, CA 92660
   T: 415.901.8700 F: 415.901.8701
4  mmock@schiffhardin.com

5  BRIAN J. HAMILTON (SBN 311053)
   **SCHIFF HARDIN LLP**
6  4 Embarcadero Center, Ste. 1350
7  San Francisco, CA 94111
   T: 415.901.8700 F: 415.901.8701
8  bhamilton@schiffhardin.com

9  Attorneys for Plaintiff ARDAGH
10 METAL BEVERAGE USA INC.

11
12               **UNITED STATES DISTRICT COURT**
13               **SOUTHERN DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| ARDAGH METAL BEVERAGE USA INC., <br><br> Plaintiff, <br><br> v. <br><br> COMMON CIDER COMPANY, <br><br> Defendant. | Case No.:  **'21CV0303 JLS AGS** <br><br> **COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF** <br> 1. Declaratory Judgment <br> 2. Trade Libel/Commercial Disparagement <br> 3. Breach of Contract <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Ardagh Metal Beverage USA Inc. ("Ardagh") brings this Complaint for damages and declaratory relief against Defendant Common Cider Company ("Common"). In support thereof, Ardagh alleges:

1. Ardagh manufactures aluminum beverage cans, and sold cans to

COMPLAINT

1. Common through distributors. Common manufactures and sells alcoholic cider beverages. Beginning in 2017, Common claims to have experienced recurring, "systemic" problems with its cider products having an off-odor. Common has sought to blame Ardagh for the problems it has allegedly experienced with its products, even though Common acknowledges those problems pre-date Ardagh's supply of cans to Common.

2. In wrongfully attempting to shift blame to Ardagh, Common has made false public statements claiming that "Ardagh Metals is recalling our [Common's] 12 oz. sleek cans because of wrong can liner." But Ardagh has never issued a recall for the cans provided to Common, and did not supply Common cans with the "wrong" liner. Rather, Ardagh supplied cans according to Common's specifications. Common has made these false statements with the intent to create the false impression that Ardagh's products were defective, so it could shift blame away from its own systemic problems, trying to place that blame on Ardagh. Common knew those statements were not true when it made them. Ardagh brings this action to recover for the damages caused by Common's knowingly false statements.

3. Moreover, Common is currently asserting that an unwritten agreement exists between Ardagh and Common, and that Ardagh is in breach of unwritten and unspecified terms of that agreement, causing Common harm, injury that Common claims is ongoing. Ardagh seeks a judicial declaration establishing the contractual rights and obligations of the parties; specifically, that it owes no ongoing contractual

obligations to Common, and that accordingly, Common's claims of a continuing injury are meritless.

4. In fact, it is Common who is in breach of the parties' written contractual agreements. Common ordered hundreds of thousands of pre-printed cans but then failed to take delivery of them or pay for them, in breach of the contractual promises it made to Ardagh. Ardagh seeks the damages it has incurred regarding that stranded inventory.

## PARTIES, JURISDICTION AND VENUE

5. Plaintiff Ardagh is a Delaware corporation with its principal place of business in Chicago, Illinois. In 2018 and 2019, Ardagh supplied Common (through distributors) with aluminum beverage cans for use in Common's business.

6. Defendant Common Cider Company is a Nevada corporation with its principal place of business in Auburn, California. Common manufactures alcoholic cider beverages in California and sells them throughout California, including in this judicial district.

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

8. Venue is proper in this Court under 28 U.S.C. § 1391 because, among other reasons, the defendant conducts business in this judicial district.

## FACTS COMMON TO ALL COUNTS

9. In 2018, Common began purchasing, through distributors, Ardagh's aluminum beverage containers for use in packaging its alcoholic beverage products. Ardagh provided both pre-labeled or "sleeved" cans with Common's designated label artwork, and so-called "brite" cans—unsleeved cans without labels or printing.

10. On or about June 6, 2018, before Ardagh provided any cans to Common, Ardagh provided to Common its standard terms and conditions of sale ("Ardagh TCs"). The Ardagh TCs plainly state that all sales of Ardagh product will be subject to such terms. The Ardagh TCs expressly disclaim any warranties regarding "[f]lavor, odor and color of filled beverages."

11. Common ordered cans by placing purchase orders through one of Ardagh's distributors. Common's purchase orders typically specified the size and type of can, the type of label to be applied to the can, the quantity, and the price. For certain orders, Common also specified that the cans be "BPANI," or "Bisphenol-A non-intent," which means that the cans have a liner that does not have Bisphenol-A intentionally added.

12. None of Common's purchase orders for Ardagh product identified the specific *type* of BPANI cans Common sought to purchase: *i.e.,* so-called Generation 1 cans, Generation 2 cans, or any other specific type of can liner. Common merely specified that the can liner be BPANI.

13. Pursuant to the Ardagh TCs and the specific purchase orders placed

through distributors, Ardagh supplied Common with cans and ends (*i.e.*, lids) for Common to fill with its cider product at Common's filling plant, using Common's filling machines.

### Common Has Long-Running "Systemic" Problems with Off-Odors.

14. On information and belief, Common had experienced historic problems with off-odors appearing in its sulfur products. According to Common, it first began experiencing these issues in 2018, when it was purchasing cans exclusively from a different can manufacturer, not Ardagh. Common described these issues with sulfuric off-odors as "systemic" in nature. Common claimed to have suffered significant damages from these systemic problems involving "off-smelling" product.

15. On information and belief, in or about February 2019, Common again began to receive customer complaints about sulfuric odors in certain of its products. At that time, Common did not assert any claims against Ardagh or claim that Ardagh's provision of "Gen1" cans violated any "agreement" or "understanding" between Ardagh and Common.

16. By the summer of 2019, Common claims to have initiated a recall of certain of its alcoholic cider products.

### Attempting to Shift Blame, Common Libels and Defames Ardagh.

17. Unbeknownst to Ardagh until 2021, however, Common was falsely blaming *Ardagh* for the 2019 recall. Common's Chief Executive Officer falsely stated to a California distributor that "Ardagh Metals is recalling our [Common's] 12

oz. sleek cans because of wrong can liner. I have been sick to my stomach the past couple of days." That statement was false in two ways: Ardagh had not recalled the products, Common had; and Ardagh had not supplied the "wrong can liner." Common knew the statement was false when it made it.

18. Common's CEO also falsely stated to representatives of a major national retailer that Common "followed all corrosive testing protocols not once, but 3 times only to discover that the cans we have received were manufactured using the wrong can BPNI can liner. We take such pride in our products and when situations like this arise it is difficult to comprehend[.]"

19. These similarly false statements were crafted to wrongfully shift the blame for Common's "systemic" odor problems to Ardagh. These statements would be clearly or necessarily understood to have disparaged the quality of Ardagh's product and/or Ardagh's ability to select and provide appropriate beverage containers for its customers' products. Common knew the statements were false when it was made.

**Common Asserts the Existence of an Unwritten "Agreement."**

20. It was not until a year later, in June 2020, that Common first wrote to Ardagh asserting that Ardagh had supplied Common with cans that violated its supposed unwritten representations and promises to "provide[] Gen2 cans." Common represented that it had been forced to issue a recall of its cider products in 2019 due to the "systemic" off-odor problems it had experienced. Common did not identify any purchase order, invoice, or other writing to Ardagh in which it specified

a particular type of lining for its cans, instead claiming that Ardagh had made "repeated" but unspecified "representations and assurances[.]"

21.  Common did not identify <u>any</u> written agreements or representations regarding Ardagh's provision of particular kinds of BPANI cans.  Common has not identified the date the supposed agreement was reached, has not specified its terms; and has not identified any Ardagh employee or representative who allegedly entered into this unwritten agreement.  Common claimed that an ongoing contractual relationship existed between Ardagh and Common, and that there were agreements and understandings not reflected in the purchase orders submitted by Common to Ardagh or its distributor, that set forth the terms of that contractual relationship.

22.  Common asserts that Ardagh's provision of cans with Gen1 liners constituted a breach of that unwritten agreement.  Common asserts that Ardagh's alleged breaches of the unwritten agreement are continuing; that Common continues to suffer injury; and that it will continue to suffer injury in the future.  Common claims ongoing damages that exceed the jurisdictional minimum under 28 U.S.C. § 1332.

## COUNT ONE – FOR DECLARATORY RELIEF

23.  Ardagh incorporates by reference the allegations of paragraphs 1 through 22 as if fully set forth herein.

24.  There exists an actual controversy between the parties regarding the existence of an unwritten agreement between Ardagh and Common whereby Ardagh has agreed to provide Common only with so-called "Gen2" BPANI cans.  Common

incorrectly asserts that such an unwritten agreement exists and that Ardagh's breach of this non-existent agreement is causing Common ongoing and continuing harm.

25. Ardagh owes Common no ongoing contractual obligations, and there exists no unwritten agreement between Ardagh and Common. Ardagh is not now, and never was obligated to provide "Gen2" cans to Common.

26. Any contractual agreements between Ardagh and Common consist only of the purchase orders Common has placed for Ardagh's products, and the Ardagh TCs.

27. Ardagh is entitled to a judicial declaration concerning the current rights and obligations of the parties pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and/or California Code of Civil Procedure § 1060.

28. Specifically, Ardagh seeks a declaration that there exists no unwritten contractual relationship between Common and Ardagh, and that the specific purchase orders placed by Common, as well as the Ardagh TCs, constitute the totality of the contractual relationship between Ardagh and Common, and set the terms of that relationship. Ardagh further seeks a declaration as to the parties' specific contractual rights and obligations; that it is not in breach of any contractual obligations between Common and Ardagh, and that Common is not sustaining any ongoing or continuing harm from Ardagh's actions.

**COUNT TWO – COMMERCIAL DISPARAGEMENT/TRADE LIBEL**

29. Ardagh incorporates the allegations set forth in in Paragraphs 1 through 28 as though they were fully set forth herein.

30. Common's statement to a distributor that "Ardagh Metals is recalling our [Common's] 12 oz. sleek cans because of wrong can liner" would be clearly or necessarily understood to have disparaged the quality of Ardagh's product and/or Ardagh's ability to select and provide appropriate beverage containers for its customers' products.

31. Common's statement, that Ardagh issued a recall for Common's products, was untrue. Common knew that the statement was untrue when it made it.

32. Common's statement that "Ardagh used the wrong can liners" was untrue. Common knew that the statement was untrue when it made it, because Ardagh supplied the cans and liners that Common requested.

33. Common's statement that it "followed all corrosive testing protocols not once, but 3 times only to discover that the cans we have received were manufactured using the wrong can BPNI can liner. We take such pride in our products and when situations like this arise it is difficult to comprehend" was crafted to shift the blame for Common's "systemic" odor problems to Ardagh. These statements would be clearly or necessarily understood to have disparaged the quality of Ardagh's product and/or Ardagh's ability to select and provide appropriate beverage containers for its customers' products.

34. Common knew or should have recognized that the distributors and retailers to whom it made these statements might act in reliance on them, causing Ardagh financial loss. Ardagh suffered financial harm from Common's statement; and

Common's conduct was a substantial factor in causing Ardagh's harm.

## COUNT THREE – BREACH OF CONTRACT

35. Ardagh incorporates the allegations set forth in in Paragraphs 1 through 34 as though they were fully set forth herein.

36. Through various purchase orders, all of which were subject to the Ardagh TCs, Common ordered from Ardagh over 300,000 cans that were custom-printed with label artwork that is specific to Common's products. Ardagh accepted such purchase orders.

37. A binding contract was formed that consisted of Common's purchase orders and the Ardagh TCs.

38. Common failed to take delivery of these cans and has failed to pay for them, in violation of the Ardagh TCs. The cans cannot be used for any other customer.

39. The Ardagh TCs specifically state that "Buyer [Common] shall be liable for charges (including storage) related to any inventory of Cans becoming 90 days of age that have been produced … but not delivered to Buyer because of Buyer's direction or default[.]" Under this provision, Common is liable for the charges associated with the 300,000-plus cans of stranded inventory.

40. Ardagh performed all contractual obligations it owes to Common. Common breached its written obligations to Ardagh by its failure to take delivery and failure to pay for this stranded inventory.

41. Ardagh has suffered damages from Common's breaches.

## PRAYER FOR RELIEF

WHEREFORE, Ardagh prays that this Court provides the following relief:

a. Enter judgment in favor of Ardagh and against Common on all counts;

b. Award Ardagh damages for Common's trade libel of Ardagh, in an amount to be determined at trial but in any event no less than $75,000, exclusive of interest and costs;

c. Award Ardagh damages for the losses it incurred due to Common's failure to take delivery and pay for over 300,000 cans that Ardagh custom-printed for Common, in an amount to be determined at trial but in any event no less than $36,000;

d. Enter a judgment declaring the respective rights and obligations of the parties, specifically that:

  i. There exist no unwritten contractual agreements between Ardagh and Common;

  ii. Any contractual obligations Ardagh owes to Common are limited to those set forth in: (a) the purchase orders that were placed by Common and accepted by Ardagh and (b) the Ardagh Terms and Conditions;

  iii. Ardagh is not in breach of any obligations to Common; and

  iv. Common is not sustaining any ongoing injuries or damages as a result of a breach of any contractual obligations owed by Ardagh to Common.

e. Award Ardagh its costs and expenses of litigation;

f. Award Ardagh such other and further relief as this Court deems just, proper, necessary and appropriate.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

| | |
|---|---|
| February 19, 2021 | SCHIFF HARDIN LLP |
| | By: *s/ Matthew B. Mock* |
| | Matthew B. Mock |
| | Brian J. Hamilton |
| | Attorneys for Plaintiff ARDAGH METAL BEVERAGE USA INC. |